IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **UAL CORPORATION, et al.,** | ) | **Case No. 02-B-48191** |
| | ) | **(Jointly Administered)** |
| **Reorganized Debtors.** | ) | |
| _____ | ) | |
| | ) | |
| **UNITED AIR LINES, INC.,** | ) | **Adversary Proceeding No. 05-02806** |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **08 cv 3337** |
| | ) | |
| **THE CITY OF LOS ANGELES, a** | ) | **Judge Moran** |
| **municipal corporation, and LOS** | ) | **Magistrate Judge Schenkier** |
| **ANGELES WORLD AIRPORTS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**UNITED AIR LINES, INC.'S REPLY IN SUPPORT OF LIMITED
OBJECTION TO PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW DATED MAY 31, 2008**

James Joslin (ARDC No. 6229288)
Alex Karan (ARDC No. 6272495)
Micah E. Marcus (ARDC No. 6257569)
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000 (telephone)
(312) 861-2200 (facsimile)

Dated: September 5, 2008

Counsel for United Air Lines, Inc.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...............................................................................................................................1

ARGUMENT.....................................................................................................................................2

CONCLUSION..................................................................................................................................5

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Forester v. Boss*,
   97 F3d 1127 (8th Cir. 1996) ............................................................................................ 4

*Guntert v. City of Stockton*,
   55 Cal. App. 3d 131 (Cal. Ct. App. 1976) ...................................................................... 2

*Johnson v. Lehtonen*,
   151 Cal. App. 2d 579 (1st Dist. 1957) ............................................................................ 2

**Treatises**

25 Williston on Contracts § 67:32 (4th ed.) ............................................................................ 2

**INTRODUCTION**

The City's Response to United's Limited Objection confirms that United is entitled to both injunctive relief and damages as a result of the City's breach of the Terminal 8 Lease. To this end, there is only one relevant legal issue: will a damages award put United in the position it would have been in but for the City's breach (United's position) or will a damages award serve as a windfall or "double recovery" to United (the City's position). Two undisputed facts answer this question in United's favor:

- ***First,*** the City does not dispute (nor could it) that but for the City's attempt in November 2005 to prohibit United's turboprop operations at Terminal 8 (which Judge Wedoff correctly concluded constituted a breach of the T8 Lease), United would have rejected the Remote Facility Lease pursuant to its rights under the Bankruptcy Code (and thus would have avoided $4.5 million in lease payments — payments from the time the City breached the T8 Lease in November 2005 until the Remote Facility Lease expired on its own terms in August 2007). In fact, United attempted to reject the lease, but withdrew its notice of rejection as a result of the uncertainty caused by the City's eviction notice.[1] Thus, <u>it is undisputed that **but for** the City's breach of contract, United would have saved $4.5 million.</u>

- ***Second,*** the City does not dispute that United's decision to continue to make rental payments pursuant to the Remote Facility Lease — payments United made to the City in light of the City's November 2005 eviction at Terminal 8 — was a rational business decision by United in an attempt to mitigate its potential losses in the event United did not ultimately prevail on its request for injunctive relief. (*See* City 8/15/08 Response at 8).

With these undisputed facts, it is clear that United is simply seeking to be put in the position it would have been in but for the City's breach. Stated differently, had the City not breached the T8 Lease through its attempts to prohibit United's turboprop operations at Terminal 8, those operations would have continued without the need for this litigation and United *would not have* withdrawn its notice to reject the Remote Facility Lease, which in turn would have saved United $4.5 million. In other words, absent a ruling in United's favor on damages, United

---

[1] *See* United's 6/30/2008 Limited Objection at p. 2 for a discussion of the factual background regarding United's attempted rejection of the Remote Facility Lease.

1

will not be placed in the same position it would have occupied but for the City's breach, and moreover, the City will be allowed to keep a $4.5 million windfall as a direct result of its breach of contract.

## ARGUMENT

Under universally accepted principles of contract law, "a court sitting in equity may award monetary compensation in addition to specific performance where necessary to effectuate full and complete relief, to place the injured party in the position it would have occupied had there been no breach of contract." 25 Williston on Contracts § 67:32 (4th ed.) (emphasis added). *See also Johnson v. Lehtonen*, 151 Cal. App. 2d 579, 581 (1st Dist. 1957) (similar). This is precisely what should occur here, as United has suffered out-of-pocket costs of $4.5 million that it should not have to bear and the City, in turn, actually profited by $4.5 million as a result of its own breach.[2]

Indeed, the primary cases cited by the City fully support United's position here. For example, the City relies heavily on *Guntert v. City of Stockton*, 55 Cal. App. 3d 131 (Cal. Ct. App. 1976). (City Response at 2-3) That case, like the one here, involved an attempt to evict the tenant from the leasehold (*Gunert* involved an attempted complete eviction, while the City's attempted eviction from the leasehold here was partial — United's turboprop operations at Terminal 8). *Guntert*, 55 Cal. App. 3d at 138-140. In both cases, the respective termination notices initiated a state of uncertainty, resulting in increased costs (here, United's continued payments of rent at the Remote Facility). As the California Court of Appeals noted in *Guntert*:

---

[2]  Whether United "got what it paid for" from the City with respect to rent at the Remote Facility is simply not the issue. United would be entitled to mitigation damages for its rent paid on the Remote Facility *even were the landlord some entity other than the City*. That is, it is not the fact that the City received United's $4.5 million in rent that makes it recoverable; it is the fact that United would not have been required to make the expenditure to *anyone* but for the City's breach.

2

> The termination notice initiated a state of uncertainty which seriously damaged Guentert's business. Pending the outcome of the lawsuit, Guntert had no assurance that his manufacturing plant could occupy the leased premises past the threatened date of eviction, i.e., September 1973. The trial court found that this uncertainty prevented Guntert from undertaking commitments and from bidding on manufacturing jobs. Although the court issued its permanent injunction in April 1973, the city's appeal perpetuated Guntert's inability to predict continued access to his manufacturing plant. Not until January 1975, 60 days after we affirmed the injunction judgment, was the nullity of the termination notice finally adjudicated.

*Id* at 139. Contrary to the suggestion made in the City's Response, the California Court of Appeals ***did not*** reject the plaintiff's damages claim. Rather, the court actually concluded: "<u>We affirm Guntert's substantive entitlement to damages.</u>" *Id*. at 140-41 (emphasis added).

While the City accurately (although misleadingly) quotes a selected passage from *Guntert* — that one component of the damages awarded by the trial court would amount to a "double recovery," (City Response at 2 (emphasis omitted); quoting *Guntert*, 55 Cal. App. 3d at 151) — the limited reversal of the trial court's damages award <u>related solely</u> to the award of "prospective loss of profits" through the end of the tenancy, <u>not</u> the lost business opportunities and other damages suffered from the time of the improper termination notice until the issue of that termination notice was finally adjudicated. *Guntert*, 55 Cal. App. 3d at 150 and 151-2 n.5. Thus, *Guntert* fully supports United's right to damages for the $4.5 million in lease payments it was required to make as a result of the "uncertainty" directly caused by the City's improper termination notice. *Id.* at 139-41.

A simple hypothetical further confirms that the award of damages in *Guntert* is consistent with an award of damages here. Assume that United had not been able to secure either a preliminary or permanent injunction ensuring continuous turboprop operations from Terminal 8 but ultimately prevailed on the merits of its breach-of-contract claim. In this scenario, United would have had a variety of monetary damages in addition to the extra lease payments at the

3

Remote Facility — both past lost profits (from the time of the breach until the final judgment) and future lost profits (from the time of the judgment until the expiration of the lease) — related to, among other things, the increased inefficiencies of operating some of its United Express operations (its regional jets) from Terminal 8 and operating other aspects of those operations (its turboprops) from the far-less-desirable and less convenient Remote Facility.[3]  But because United was never forced into such a split operation of its United Express business, it was never damaged in this regard and thus did not assert a lost profits claim here.  Had United done so, the City then would have been correct in asserting that these are the types of damages that would result in a "double recovery," just as the *Guntert* court noted.  Instead, United's damages relate solely to the "uncertainty" caused by the City's breach — United's reaction to which (the continued lease payments at the Remote Facility pending final adjudication or the expiration of the lease) was indisputably reasonable.

The reasoning behind the other cases relied on by the City is likewise completely consistent with an award of damages here.  The City relies on a number of cases, most notably *Forester v. Boss*, 97 F.3d 1127 (8th Cir. 1996), for the proposition that a plaintiff cannot recover specific performance and money damages from the same breach.  (*See* City Response at 3-4: "Plaintiffs have, in effect, received not only damages for fraud and breach of contract, but also specific performance.  They have both the money and the property, and are in a better position than they would have been in had there been no fraud or beach of contract in the first place." (quoting *Forester*, 97 F. 3d at 1129))  But the logic regarding double recovery discussed in the City's cases is completely inapposite here.  United has not received "both the money and the

---

[3]  As Judge Wedoff found: "A forced return to the remote facility would disrupt [United's] schedules and cause a decline in convenience and comfort for passengers, who would have to be bused from the central terminal area to the less pleasant remote facility, with a 5-15 minute increase in connection time."  (Wedoff Op. at 18)

4

property." To the contrary, while United has the property, it has far less money than it would have had absent a breach — the $4.5 million it paid to the City in order to mitigate against a potential loss during the state of uncertainty, which was caused exclusively by the City's breach.

## CONCLUSION

The bottom line is that an award of damages is necessary here in order to make United whole. Indeed, to rule in the City's favor here would offer no deterrence against – and likely even incentivize breaches of a similar nature in the future. For this reason, this Court should reject this lone aspect of Judge Wedoff's otherwise well reasoned and thoughtful opinion.

Dated: Chicago, Illinois
       September 5, 2008

Respectfully submitted,

   /s/ Micah E. Marcus
James Joslin (ARDC No. 6229288)
Alex Karan (ARDC No. 6272495)
Micah E. Marcus (ARDC No. 6257569)
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000 (telephone)
(312) 861-2200 (facsimile)

Counsel for United Air Lines, Inc.